The Chief Justice

delivered, the Opinion of the Court.
These are four consolidated actions of ejectment, brought on the demises of John Martin’s Heirs, claiming under two adjoining patents id their ancestor and one Todd as joint tenants, against a multitude of persons, some of whom are covered by other patents older than either of those under which the lessors claim, and others of whom are included within the boundaries of a junior grant.
After defendants, had been made in two of the actions, and common orders had been returned fully executed in the other two, an entry was made in each case, reciting that it was agreed between the plaintiffs and ‘ The defendants,” that all the four cases should be consolidated and heard together; that the lessors were the heirs of the patentee, Martin, and that each of the defendants might be' a witness for any co-defendant.
The jury, sworn to try “the issues” in all the cases, having found a verdict for all the defendants, upon which judgments were rendered in bar of all the actions — the first question presented for revision is whether it was proper to render judgment against the lessors .in either of the two cases, in which there had been no express order making defendants, and no plea expressly filed.
And we are clearly of the opinion that the recitals in the agreement, as well as the tenor of the whole trial, show satisfactorily that, without formal entries, it was understood that all the tenants in possession, who were sued, were to defend upon the general issue in each case alike. And therefore, this first objection is, in our opinion, entitled to no serious consideration.
The most material question on the merits, is whether the persons who reside within the limits of patents older than those of the lessors, were estopped, by privity of ten *329 tire under the titles of the lessors, from availing themselves of protection under the senior grants.
Land was purchased by parties whose vendor assured them that, he owned all the conflicting titles; and would guaranty to them indisputable rights—these purchasers cannot be considered as having entered under any of the titles exclusively; but must be viewed as holding under that which will give them the best right; they are not estopped from resisting eviction by relying on the elder grant.
A verdict in favor of a tenant who has been near 50 years in possession, and against a plaintiff who claimed that the deft. had entered under his title, & was estopped to deny his right, should not be disturbed, tho’ there may have been a decided preponderance of evidence in favor of the estoppel.
As to some of these defendants, there was no attempt to prove that they entered or ever claimed to hold under Martin’s title; and therefore, as to them; there can be no pretence of estoppel.
Others had bought the claim Of one James Haggin, who had a conveyance from one Owen, to whom John L. Martin, as attorney in fact for John Martin, the patentee, had made a conveyance. It appears, however, that none of these persons would consent to buy Haggin’s fclaim until he assured them that he owned the titles of all the conflicting patentees, and would therefore guaranty an indisputable right to the land, which they respectively bought from him in consequence of those declarations. Now it is evident, that those who thus entered under Haggin, cannot be considered as having entered under Martin’s title exclusively; but should be deemed to have entered and continued to hold under all the conflicting patents, aiid more especially under that which gives the best right. They cannot, therefore, be estopped from resisting eviction by relying on the senior grants, and especially, so far as they claimed Martin’s title by conveyances, and did not look to his heirs for any title. As to one of the defendants, that is, Thomas Reynolds, there was testimony conducing to show that he had entered under an executory contract of purchase from John L. Martin, as agent of John Martin; and that, though he had Continued to reside on the land for dearly 50 years, life had said very recently, that he had never obtained a title from Martin’s heirs. But one witness stated facts conducing to the conclusion, that Thomas Reynolds, lived on the land, claiming it as his own, long prior to his contract for Martin’s claim, arid that he did not, therefore, enter under that claim.
Upon such a conflict of evidence, even though the preponderance may be strongly in favor of the alleged estoppel, the verdict, protecting an occupancy for half a century, should not be disturbed.
We cannot perceive any essential error in giving or withholding instructions to the jury on the trial, or in any *330 opinion by the Circuit Court, during the progress of the trial. And therefore, as to all the defendants who reside within the limits of any patent older than those of the lessors, the judgment of the Circuit Court will be affirmed. There must be an affirmance, also, as to those living within the boundary designated on the plat as Alsman’s and Cobb’s; and also, as to all those residing within the boundary of Woodson’s “river bottom land;” because there was sufficient proof of an adverse occupancy of the whole of all those parcels of land for more than twenty years prior to the commencement of these actions.
Reversal as to some defendants whose land is not covered by any patent but those of the lessors, and who failed to show 20 years possession.
But we are inclined to think that there should not be an affirmance of the judgment in favor of John Robards, so far as his eighty eight acres are concerned; because that tract is not covered by any other patent than that of the lessors; and although there is some testimony as to an occupancy by him, for more than twenty years, yet the evidence, as to most of that time, seems to have been only hearsay; and moreover, the record does not show whether he resided on the eighty eight acres, or on the fifty two acres, included within Gaines’ elder patent.
And as neither the plat, nor any other evidence, shows that Thomas Walter’s eighty one acres, William Finn’s fifty acres, or the lands occupied by Murphy and G. Mas-ten, are included within the boundaries of the tract called “river bottom land” or Cobb’s or Alsman’s, (as to all of which there was proof of twenty years adverse occupancy,) and as, also, there is no eivdence as to the duration of the possession by either Walters, or Finn, or Masten, or Murphy — and neither of them has exhibited any title, and none of them are covered by any grant older than that of Martin — it seems, therefore, that as to them, the plaintiffs were entitled to judgments for undivided moieties — except as to Thomas Waller’s sixty four acres, included within the bounds of Curd’s elder patent, and so much also of Finn’s fifty acres as is covered by the same .grant.
Wherefore, as to the defendants, Thomas Walters, William Finn, C. Masten, S. Murphy, and John Robards, the judgment is reversed, and the cause remanded for a *331 new trial. And as to all the other defendants, the judgments in their favor, are affirmed.